IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-cr-10019-MJR-JAG-2 |
| ) | |
| SCOTT GUSTIN, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

A. Introduction

Federal Rule of Criminal Procedure 33(a) authorizes a federal district court to vacate a judgment and grant a new trial "if the interest of justice so requires." As amended effective December 1, 2009, Rule 33(b) provides that a new trial motion founded on any reason *other than* newly discovered evidence must be filed within 14 days after the jury verdict or finding of guilt. Following a three-day trial in April 2010, a jury returned guilty verdicts against Scott Gustin on four charges. Gustin immediately moved for a new trial. For the reasons stated below, the Court denies that motion (Doc. 144).

B. Procedural History

Via August 2009 superseding indictment, Jose Gaeta and Scott Gustin were charged with assault with intent to commit murder (Count 1), assault with a dangerous weapon (Count 2), assault resulting in serious bodily injury (Count 3), and possession of contraband at the Federal Correctional Institution in Pekin, Illinois (Count 4). Gustin alone

was charged with possession of contraband at the Mason County Jail (Count 5). Gaeta entered a guilty plea. Gustin opted for trial. Ultimately, the United States of America ("the Government") dismissed Count 3, and Gustin went to trial on four counts – two charges of assault and two charges of possessing a prohibited object in prison.

On March 31, 2005, with trial scheduled to start on April 5, 2010, the Honorable Michael Mihm conducted a final pretrial conference herein. Due to Judge Mihm's unavailability for the April 5th trial, Chief Judge Michael P. McCuskey of this Court reassigned Defendant Gustin's case to the undersigned District Judge on April 2, 2010 – a reassignment to which the parties had no objection (*see* 4/1/10 minute entry) and which was authorized via designation of Chief Judge Easterbrook of the United States Court of Appeals for the Seventh Circuit (*see* Doc. 127).

The parties appeared before the undersigned Judge on April 5, 2010. Jury selection and opening statements were completed. Trial continued the following day (April 6, 2010). Additional evidence was presented, motions were made and ruled on, and stipulations were entered. The trial was completed on day three (April 7, 2010), with evidence presented by the defense, stipulations read to the jurors, closing arguments, and jury instructions. Deliberations commenced at approximately 2:30 pm. Verdicts were returned at 7:00 pm – finding Gustin guilty on all four charges (Counts 1, 2, 4 and 5 of the superseding indictment).

On April 8, 2010, Defendant Gustin moved for a new trial. The Court entered a briefing schedule through May 24, 2010. The motion is ripe for disposition.

C. Analysis of Motion

As noted above, a district court may grant a defendant's motion and order a new trial "if the interest of justice so requires." **FED. R. CRIM. P. 33(a).** The Seventh Circuit has explained: "A defendant is entitled to a new trial if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." ***United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006).**[1]

The district court may consider the credibility of the witnesses in determining whether a new trial is warranted. ***United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999),** *cert. denied*, **533 U.S. 961 (2001).** But the court *may not* re-weigh the evidence and *must not* set aside a jury's verdict casually. To warrant a new trial, the evidence has to preponderate so heavily against the verdict that it would be a miscarriage of justice to let the verdict stand. ***United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989).**

As to motions for new trial based on the weight of the evidence, the Seventh Circuit has declared that they "are not favored," and district courts should grant them "sparingly and with caution, doing so only in those really 'exceptional cases.'" ***Reed*, 875 F.3d at 113.** *Accord* ***United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996)**("a jury verdict

---

[1] A different standard governs motions for new trial based on newly-discovered evidence. To obtain a new trial based on new evidence, a defendant must establish that the evidence (1) was discovered after trial; (2) could not have been discovered sooner with due diligence; (3) was material and not merely impeaching or cumulative; and (4) would "probably result in acquittal" if presented at a new trial. ***United States v. Reyes*, 542 F.3d 588, 595 (7th Cir. 2008);** ***United States v. McGee*, 408 F.3d 966, 989 (7th Cir. 2005).**

**should not hastily be disturbed through the grant of a motion for a new trial.");** *United States v. DePriest*, **6 F.3d 1201, 1216 (7th Cir. 1993)(motions for new trial must be approached with great caution, and judges should be wary of second-guessing jury determinations);** *United States v. Kamel*, **965 F.2d 484, 490 (7th Cir. 1992)(courts are to "exercise great caution in setting aside a verdict reached after fully-conducted proceedings," particularly when "the action has been tried to a jury").**

In the case *sub judice*, Defendant Gustin seeks a new trial only as to his conviction on Count 1 of the superseding indictment. That count charged Gustin with assault with intent to commit murder at FCI-Pekin, a violation of 18 U.S.C. 113(a)(1). This charge stemmed from Gustin's attack on fellow inmate Nicholas Padilla, an attack in which Padilla was repeatedly stabbed.

Gustin asserts that his conviction on this charge was based largely on "incompetent evidence in the nature of forensic pathology" offered by prison nurse, Theodore "Ted" Wall (Doc. 144, p. 1). Specifically, Gustin complains that Wall testified to matters not included in his reports, "such as the fact that Padilla's wounds appeared to have been inflicted with an 'ice pick like device'" (*id.*). Gustin further takes issue with Wall having been allowed to opine that both a bladed weapon and an ice-pick shaped weapon could leave the same type of puncture wound if inserted to the depth of one-quarter or one-half inch. Gustin maintains that this opinion is "at variance with" an authoritative medical work setting forth guidelines for applying pathology to crime investigation – *Medicolegal Investigation of Death*, Spitz and Fisher, 4th ed. (2006)(*id.*).

These arguments are utterly devoid of merit. Ted Wall is a registered nurse who has been employed at FCI-Pekin for over 14 years. The evidence presented at trial – via direct examination by the Government – established the following. Around 12:45 p.m. on December 30, 2008, Nurse Wall saw inmate Nicholas Padilla as he was brought to the FCI-Pekin infirmary. Wall assessed and treated Padilla, who had a variety of abrasions, cuts and puncture wounds. When asked if the puncture wounds in question were distinguishable from "a slice, for example," Wall testified affirmatively (*see* Trial Transcript Excerpt – "Tr." – Doc. 149, p. 5).

Padilla's wounds included abrasions on his face and arm, multiple puncture wounds, and what appeared to be a defensive wound to the hand. The puncture wounds "tended to be directed towards the chest area," and the scrapes and abrasions throughout the upper body were indicative of a "scuffle or fight" with several individuals (Tr., pp. 8-9). Asked on direct examination regarding whether he noticed anything about the *shape* of the wounds, Wall testified that they "appeared to be made from [an] ice-pick-like device, not something that was made from a bladed weapon" (*id.*, p. 9).

Significantly, defense counsel interposed no objection during these questions of Nurse Wall. Moreover, on *cross-examination,* defense counsel delved right into the issue of the shape of Padilla's wounds, using photographs of the wounds and the clothing worn by Padilla at the time of the attack to further this line of questioning (Tr., pp. 14-16):

> Q.   [by defense attorney William C. Loeffel]: Now, you indicated that based on your examination ... of the wounds, that apparently ... an ice pick-shaped instrument was involved?

A.     [by Nurse Wall]:     Yes, something that would make a puncture wound rather than a slice or a cut.
...

Q.     Showing you Exhibit 5C, could you show us the wound that you're referring to as consistent with puncture with an ice pick?

A.     We have a wound here and here, both of which are puncture type wounds.

Q.     Okay. And you would distinguish those types of wounds from a wound caused by a bladed instrument?

A.     Yes.

Q.     If I could see the next set of photos, the next photo? And if you could show us the puncture type wound in this photo?

A.     Again, we have a puncture type wound here and again here.

Q.     Consistent with an ice pick-type object, not a bladed object, correct?

A.     Correct.

Q.     Okay. Next photo? And for the record that was 5B I was showing. And now I am showing 5E. Referring to 5E, could you show us the puncture type wound that you see there?

A.     We have a puncture wound located here.
...

Q.     Okay. And that is consistent with a ice pick type object, not a bladed type of object?

A.     Yes.

Q.     Thank you. And I'll get back to the ice pick and the bladed object, but before I do that ...

Defense counsel then questioned Nurse Wall using a picture of Padilla's head wound and Government's Exhibit 2 and 3 ("shanks" or weapons). As to Exhibit 2, defense counsel elicited from Nurse Wall testimony that the tip of the device indicated it was "intended for jabbing rather than cutting" (Tr., p. 17), and that if inserted into a person it "would leave a puncture type of wound" (*id.*, p. 18).

The trial transcript plainly reveals that any complaint Defendant now lodges to Wall testifying about the wounds being inflicted by an ice-pick device is both untimely and misplaced. Defense counsel *failed to object* when this was raised in the Government's direct examination. Moreover, defense counsel himself *developed and emphasized* this theme in cross-examination of the nurse. Assuming arguendo that Wall testified to a matter "not included in his reports" (*i.e.*, that an ice-pick shaped weapon likely wounded Padilla), Defendant's failure to timely object dooms any effort to use that testimony as the foundation for a new trial motion.

Indeed, defense counsel adduced evidence regarding Ted Wall's background and training in trauma nursing, as well as his study in the field of "mechanism of injury," which aids Wall in determining how injuries occur (Tr., p. 10). Any objection to Wall's testimony as to the nature of Padilla's wounds comes too late. And the record completely belies defense counsel's assertion that he was "deprived of a meaningful opportunity to query Ted Wall regarding his observations and opinions" (Doc. 144, p. 2). The Government correctly notes that the evidence against Defendant Padilla was overwhelming (Doc. 148, p. 4), and a new trial is not merited.

D.  Conclusion

Ample evidence supports Defendant Gustin's conviction on Count 1 of the superseding indictment (assault with intent to commit murder).  Clearly, the interests of justice do <u>not</u> require that Gustin be afforded a new trial.  For all the above-stated reasons, the Court **DENIES** Gustin's motion for new trial (Doc. 144).

IT IS SO ORDERED.

DATED June 30, 2010.

s/ Michael J. Reagan
Michael J. Reagan
United States District Court
